FLORENCE A. BRADT *vs.* WILLIAM J. HOLLAWAY & another, trustees.

Suffolk. February 17, 1922. — July 10, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Sale,* Implied warranty, Of fur. *Contract,* Implied. *Sales Act.*

If at the trial of an action under G. L. c. 106, by a woman against a dealer in furs for breach of warranty relative to a certain fur the plaintiff testifies that a salesman of the defendant selected it for her and the salesman testifies that the plaintiff purchased the fur on his recommendation, it cannot be said that there is no evidence warranting findings by the jury that the plaintiff relied upon the salesman's skill and judgment and that he reasonably should have been aware that the plaintiff was relying upon him.

At the trial of an action under G. L. c. 106, by a woman against a dealer in furs for breach of an implied warranty of the fitness of a dyed blue fox skin to be worn as a neck-piece, where the declaration alleged that the presence of a poisonous substance in the fur caused an eruption upon the plaintiff's face and neck, there was evidence that the plaintiff had a highly sensitive skin, that the

injury was caused by the length of hair of the fox skin and that a normal person would not have been so affected. There was no evidence which warranted a finding that the injury was due to the presence of a poisonous substance in the dye as alleged. *Held,* that, even if the long hair of the fox skin could constitute a "defect" within the meaning of G. L. c. 106, § 17, it was not the subject of an implied warranty, being a defect obvious to the plaintiff.

CONTRACT OR TORT for personal injuries alleged to have been caused by poisoning from a fur neck-piece purchased from the defendants. Writ dated May 22, 1918.

The declaration was in three counts, the first count being for breach of warranty and the second and third counts being for negligence and false representations. The first count alleged that the plaintiff purchased from the defendants, who were dealers in furs, a dyed fox skin which the defendants warranted was suitable for wear; that the defendants made the skin into a neck-piece which, relying upon their representations, the plaintiff wore; "that the said furs were not reasonably fit for the purpose for which the defendants had made known and requested them, but the said furs were unfit for use and wear or contact with the plaintiff's skin and unfit for use as dyed fox skins or furs, and that the said skins or furs contained substances poisonous, noxious and wholly irritating and injurious to the skin; that as a result of the wearing of said furs, and almost immediately, and in consequence thereof the plaintiff's skin on the face, neck, chest and arms broke out in eruptions and that she felt a burning sensation over the portions of the body affected, causing considerable pain, which pain became so violent that she was made ill . . . and was seriously and permanently injured solely in consequence of the use of said furs."

In the Superior Court the action was tried before *Keating,* J. Material evidence is described in the opinion. At the close of the evidence, the plaintiff waived the second and third counts in the declaration and the action was submitted to the jury on the first count. The jury returned a verdict for the plaintiff in the sum of $600 and by agreement of the parties the judge reported the action to this court for determination upon the terms that if he was right in submitting the action to the jury judgment was to be entered for the plaintiff on the verdict, but if he was wrong, judgment was to be entered for the defendants.

*J. H. Devine,* for the plaintiff.

*J. P. Carr,* for the defendants.

De Courcy, J.   The plaintiff brought this action to recover for injuries to her skin, alleged to have been caused by wearing a fur neck-piece purchased from the defendants in August, 1917. At the close of the evidence she waived the count based on negligence and that for false representations. The case was submitted to the jury on the count in contract, alleging a breach of warranty. While some of the language in this count points to an express warranty, it is apparent from the record that the trial proceeded upon the basis of an implied warranty that the fur piece was suitable for wear. The question raised by the report is whether the trial judge was justified in submitting the case to the jury.

The pertinent parts of the sales act (St. 1908, c. 237, see now G. L. c. 106), on which the rights of the parties depend, are these: "Section 17. There is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

"(3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

The defendants admit that their salesman knew "the particular purpose" for which the fur neck-piece was required by the plaintiff. On the issue whether the plaintiff in making the purchase relied on the skill or judgment of the salesman (Riedel) these facts appear: she had been a customer of his for four or five years. At her first visit to the store in August she was shown a natural blue fox scarf, but considered it too expensive for her. The salesman then produced one of a pair of dyed blue fox skins; the other having been made up into a scarf, and being then in the hands of a salesman out on the road. At Riedel's suggestion she postponed a decision and returned later, when she was shown the scarf. Her testimony was that Riedel selected it for her; and he testified that "She bought it on my recommendation." We cannot say that there was no evidence for the consideration of the

jury that the plaintiff relied upon the salesman's skill and judgment, and (assuming this was necessary) that he reasonably should have been aware that she was relying on him. *Gearing* v. *Berkson,* 223 Mass. 257. *Ward* v. *Great Atlantic & Pacific Tea Co.* 231 Mass. 90, 93. *Wallis* v. *Russell,* [1902] 2 I. R. 585.

As to breach of the implied warranty of fitness: There was no evidence or claim that the neck-piece was unfit for ordinary wear, except as it may have caused the irritation and eruption of the plaintiff's skin. If this trouble were due to some noxious substance in the dyed fur, a neck-piece so infected might well be found unfit for the purpose for which it was required. *Dushane* v. *Benedict,* 120 U. S. 630, 636. *Flynn* v. *Bedell Co. of Massachusetts, post,* 450. But the record fails to disclose such a case of external poisoning. The plaintiff produced no analysis of the dye, although the fur was in her possession. Of the many medical experts consulted by her, only one, Dr. Towle, appeared as a witness. He testified that the plaintiff had a skin "so hypersensitive that it reacts unduly to irritation of any sort;" and stated as his opinion that the plaintiff's inflammation was due to "the length of the fur." There was no evidence that the dye came off this neck-piece, or "crocked." The only other testimony on this subject was that of Riedel, that he never knew dyes to come off of light furs, and that so far as he knew or had been able to learn from the furriers or dyers "there is nothing about the fur that is injurious to any normal person." In short, there was no evidence to warrant a finding that the plaintiff's injury was due to any poisonous or injurious substance in the fur, as alleged. On the contrary Dr. Towle testified: "From examination here of the furs the only thing I find about them which would cause a person trouble is the length of the fur and only to an abnormal person would that cause trouble." Even if long hair on fox skin could constitute a "defect" within the meaning of the statute, it was obvious to the plaintiff. She examined the scarf, compared it with others, and put it about her neck. By the express terms of § 17, cl. 3 of the sales act, there is no implied warranty as regards such a "defect."

The plaintiff did not make out a case entitling her to go to the jury; and in accordance with the report the entry must be

*Judgment for the defendants.*