FRANKE'S, INCORPORATED *v.* BENNETT.

4-6126                                                    146 S. W. 2d 163

Opinion delivered January 7, 1941.

*Martin, Wootton & Martin,* for appellant.

*Leo P. McLaughlin* and *Earl J. Lane,* for appellee.

McHANEY, J. Appellee brought this action against appellant to recover damages for injuries she sustained by reason of having eaten sea scallops in appellant's

cafeteria, which she alleged were unwholesome and unfit for human consumption. She relied upon an implied warranty of fitness of the food and prayed damages in the sum of $3,000. The answer was a general denial. Trial resulted in a verdict and judgment for $3,000, from which comes this appeal.

The principal reliance of appellant for a reversal of the judgment is that there is no evidence that the scallops were unwholesome and unfit for consumption, and that, therefore, the court erred in refusing to direct a verdict for it at its request. We agee with this contention.

The facts are without substantial dispute. Appellant operates a cafeteria in the city of Hot Springs, and, on Monday, January 15, 1940, appellee, who is deputy city clerk, entered appellant's place of business for her noon meal, or luncheon, and ordered and ate sea scallops, a slaw salad composed of cabbage and carrots, corn bread sticks and a piece of cake. After eating her luncheon, she returned to her office in the City Hall, and about an hour later became violently ill with nausea, began vomiting, and was very sick. She was removed to her home and later in the afternoon she was taken to a hospital where Dr. Chamberlain attended her and washed out her stomach. She was discharged from the hospital the next afternoon and returned to her work the following Monday. She had never eaten scallops before and did not know how they tasted. She testified that they had a kind of a sharp, bitey taste. Another customer ate of the same scallops at her table and no complaint was made about the food by either while eating. On the part of appellant, it was shown that the scallops were purchased from a Boston dealer of excellent reputation and were shipped in a sealed can in ice and were received on Sunday afternoon, January 14, and were immediately placed in refrigeration at a temperature of about 35 degrees, or lower, and on Monday morning, January 15, were removed from the refrigerator, opened and prepared for consumption under proper sanitary conditions. The shipment contained 36 servings and all the contents of the can were prepared and served to 36

patrons on the same day, of which appellee was one. No complaint was received by appellant from any of the persons consuming said scallops except appellee, and four of those so eating of the scallops testified in this case.

The physician, in answer to a question as to what his diagnosis of her trouble was, answered: "Acute poisoning due to sea food." His answer was based on what she told him she had eaten and not on any examination or analysis of the contents of the stomach.

We think this evidence fails to establish the necessary fact that the scallops were unwholesome and unfit for human consumption. It does establish the fact that she ate lunch at appellant's cafeteria and shortly thereafter became ill, and, perhaps from the scallops, perhaps from the salad, the corn bread or the cake. But, if we assume she became ill from eating the scallops, still this does not prove that they were bad. She might be allergic or susceptible to them, so that they would make her ill, even though they were entirely wholesome. It is a well known fact that many people are allergic to particular foods, no matter how pure nor how well prepared, and cannot eat them. It is true, as argued by learned counsel for appellee, that there is an implied warranty of fitness for human consumption and wholesomeness, by the owner of an eating place to the customer, of food purchased therein for immediate consumption. *Heinemann* v. *Barfield,* 136 Ark. 500, 207 S. W. 62; *Safeway Stores* v. *Ingram,* 185 Ark. 1175, 51 S. W. 2d 985; *Lewis* v. *Roescher,* 193 Ark. 161, 98 S. W. 2d 956. But this rule does not dispense with the necessity of proof that the food so sold is deleterious or unwholesome. We do not think that the mere fact that a person eats food in a restaurant, hotel or cafeteria and thereafter becomes ill is of itself sufficient to establish liability on the owner, but the proof must go further and show that some particular article of the food consumed was in fact unwholesome and unfit for human consumption. Otherwise, such business would be fraught with hazard, and be at the mercy of the unscrupulous, for any one who so purchased food and thereafter developed

a stomach ache could maintain an action for damages against the seller. There is here no thought or intimation that appellee's action is one of that class. Our holding is that she has failed to prove that the scallops were unwholesome, and the burden was on her to do so. The undisputed proof on behalf of appellee shows that every precaution was taken in the purchase, shipping, storage and preparation of same, and the fact that 35 other persons partook thereof without injury is a strong circumstance of purity. We cannot agree with appellee's suggestion that one order out of 36 might be bad and the others good. It might be possible, but hardly probable. That would be pure speculation and conjecture.

The judgment is, therefore, reversed, and, as the cause has been fully developed, it is dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.