## MRS. PEARL HANRAHAN v. WALGREEN COMPANY, INC.

(Filed 14 December, 1955.)

**1. Sales § 27—**

Plaintiff's evidence was to the effect that after using a hair rinse purchased from defendant she had weeping dermatitis of her entire scalp and parts of her face and neck, and that a friend, who purchased and used the same brand of rinse, had her scalp become red and inflamed. There was no evidence that the rinse had been adulterated, misbranded or falsely advertised, or that it contained any poisonous substance. *Held:* The evidence leaves in speculation and conjecture whether the plaintiff's condition was due to allergy or to some harmful and poisonous substance in the rinse, and therefore nonsuit was properly entered in her action for breach of implied warranty.

**2. Same—**

It is generally held that the seller is not liable to the purchaser for damages from the use of the product resulting from an allergy or unusual susceptibility peculiar to the purchaser which is wholly unknown to the seller.

**3. Trial § 23a—**

A verdict may not be based upon mere conjecture or guesswork.

APPEAL by plaintiff from *Williams, J.,* February Civil Term 1955 of WAKE.

Action to recover damages for breach of warranty in the sale by defendant to plaintiff of Noreen Super Color Rinse.

In January 1953 plaintiff purchased from the defendant a hair rinse named Noreen Super Color Rinse. She read the directions on the box for its use, and followed these directions the three times she used the preparation to rinse her hair. Each time her scalp became irritated. Prior to its use she had never had any trouble with her scalp or head. After its third use she consulted a doctor, who found that she had weeping dermatitis of her entire scalp, behind her ears, on her face, and somewhat down the posterior part of her neck. Her witness, Dr. Newton G. Pritchett, testified: "I mean by a weeping condition that it was

not an infection but the fluid that oozes from a contact, an acute type of rash." She was treated for this condition in a doctor's office and in a hospital. She incurred doctor's, medical and hospital expenses.

A girl friend of plaintiff rinsed her hair with the rinse plaintiff purchased from the defendant, and her scalp became red and inflamed from its use.

Dr. Pritchett further testified that plaintiff's dermatitis was caused by some chemical contact with the scalp, but that he could not say what that chemical might be: that it is an allergic reaction to a chemical coming in contact with the body surface. Dr. Pritchett made no chemical analysis of this Noreen Super Color Rinse, and does not know its ingredients. After medical treatment plaintiff's dermatitis came under control.

At the close of plaintiff's evidence, the Court sustained the defendant's motion for judgment of nonsuit.

Plaintiff appeals, assigning error.

*R. B. Templeton and W. H. Yarborough for Plaintiff, Appellant.*
*Smith, Leach, Anderson & Dorsett for Defendant, Appellee.*

PARKER, J. Webster's New International Dictionary, 2d Edition, defines cosmetic as "any external application intended to beautify and improve the complexion, skin, or hair." The plaintiff has no evidence to cause the hair rinse she purchased from defendant to be deemed adulterated, as set forth in G.S. 106-136; or to cause it to be deemed misbranded, as set forth in G.S. 106-137; or to cause it to be deemed false advertising, as set forth in G.S. 106-138.

Plaintiff testified that the hair rinse she bought from defendant contained eight capsules, and she used all except three. Although three of these capsules were in her possession, she produced no analysis of them showing they contained any deleterious substance. Her physician testified that her condition was caused by some chemical contact, but he could not say what that chemical contact might be.

It would seem that the cause of plaintiff's dermatitis remains a matter of doubt and conjecture. It may be that she and her girl friend were allergic to the ingredients of this hair rinse. Although there are contrary decisions, it has been generally held—and it seems the sounder view—that in an action by the buyer of a product against the seller for breach of warranty to recover damages for injuries resulting from the use of the product, there is no liability upon the seller, where the buyer was allergic or unusually susceptible to injury from the product, which fact was wholly unknown to the seller and peculiar to the buyer. *Ross v. Porteous, Mitchell & Braun Co.*, 136 Me. 118, 3 A. 2d 650; *Franke's,*

*Inc. v. Bennett,* 201 Ark. 649, 146 S.W. 2d 163; *Stanton v. Sears Roebuck & Co.,* 312 Ill. App. 496, 38 N.E. 2d 801; *Worley v. Proctor & Gamble Mfg. Co.,* (Mo.) 253 S.W. 2d 532; *Longo v. Touraine Stores, Inc.,* 319 Mass. 727, 66 N.E. 2d 792; *Flynn v. Bedell Co.,* 242 Mass. 450, 136 N.E. 252, 27 A.L.R. 1504; *Barrett v. S. S. Kresge Co.,* 144 Pa. Super. 516, 19 A. 2d 502; *Bennett v. Pilot Products Co.,* (Utah) 235 P. 2d 525, 26 A.L.R. 2d 958; *Griffiths v. Peter Conway Ltd.* (1939) All Eng. 685— C.A.; Anno. 26 A.L.R. 2d 963 *et seq.* See also: *Lippard v. Johnson,* 215 N.C. 384, 1 S.E. 2d 889, as to allergy. Contrary decisions: *Zirpola v. Adam Hat Stores,* 122 N.J.L. 21, 4 A. 2d 73; *Reynolds v. Sun Ray Drug Co.,* 135 N.J.L. 475, 52 A. 2d 666.

It may be that there was a poisonous substance in the hair rinse, but there is no evidence to support such a conjecture.

We cannot resort to a choice of possibilities: that is guesswork, not decision. See *Mills v. Moore,* 219 N.C. 25, 30, 12 S.E. 2d 661.

The plaintiff relies principally upon *Bianchi v. Denholm & McKay Co.,* 302 Mass. 469, 19 N.E. 2d 697, 121 A.L.R. 460. The facts are different from the case here. In that case there was evidence that the face powder contained two aniline dyes, and that these dyes caused plaintiff's dermatitis.

There is no evidence that plaintiff or her girl friend were or were not persons whose skins were only normally sensitive to infection or irritation. We need not inquire in the case at bar, whether or not there is any assumption that a human being is a normal one, and if there is such an assumption, whether it is merely the drawing of a permissible, though not a compulsory inference of fact, or whether or not it rises to the dignity of a presumption, or even to *prima facie* evidence, for there is no evidence here that the hair rinse contained any poisonous or deleterious ingredient to a normal person who used it. See: *Payne v. R. H. White Co.,* 314 Mass. 63, 49 N.E. 2d 425.

We conclude that there is a total absence of proof of any damage to plaintiff proximately resulting from breach of warranty. See: *Mauney v. Luzier's, Inc.,* 215 N.C. 673, 2 S.E. 2d 888; *Lippard v. Johnson, supra.*

The judgment below is

Affirmed.